UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GASLAND PETROLEUM, INC.,

                          Plaintiff,                Case No. 1:14-cv-597(DNH/CFH)

     -against-

FIRESTREAM WORLDWIDE, INC.,

                          Defendant.

---

## PLAINTIFF GASLAND'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

---

YOUNG/SOMMER LLC
*Attorney for Plaintiff Gasland Petroleum, Inc.*
Executive Woods
5 Palisades Drive
Albany, New York 12205
Tel (518) 438-9907
Fax (518) 438-9914
jcastiglione@youngsommer.com
dsommer@youngsommer.com

Of counsel:

     Joseph F. Castiglione, Esq.
     Dean S. Sommer, Esq.
     October 7, 2014

# TABLE OF CONTENTS

**Page**:

STATEMENT OF FACTS IN OPPOSITION...........................................................................1

    A.    Introduction.......................................................................................1

    B.    Gasland's Interactions with the Defendant .......................................2

    C.    The Defendant's Defective Products/Services.................................8

    D.    The April 22, 2014 Letter-Agreement. ..........................................10

    E.    This Litigation.................................................................................11

ARGUMENT

POINT I:    THE PURPORTED FORUM SELECTION CLAUSE WAS
NOT "REASONABLY COMMUNICATED" TO GASLAND
AND IS OTHERWISE NOT ENFORCEABLE ...........................14

    A.    The Legal Standard for Determining Enforceability
Of Forum Select Clauses ...............................................................14

    B.    The Forum Clause Was not "Reasonably Communicated"
And Is not Enforceable ..................................................................16

    C.    Enforcement is Unreasonable or Unjust ........................................21

POINT II:    THE APRIL 22, 2014 LETTER-AGREEMENT IS A
SEPARATE AGREEMENT AND NOT SUBJECT
TO ANY FORUM SELECTION CLAUSE .................................24

CONCLUSION....................................................................................................27

## Table of Authorities

Page

*Case Law*

*131 Heartland Blvd. Corp. v. C.J. Jon Corp.,*
    82 AD3d 1188, 1189 (2d 2011) ........................................................................24

*Applehead Pictures LLC v. Perelman,*
    80 AD3d 181, 189 (1st Dept 2010)..................................................................26

*Arciniaga v. General Motors Corp.,*
    460 F.3d 231, 237 (C.A. 2 2006) .....................................................................26

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,*
    145 F.3d 505, 509-10 (2d Cir. 1998) ...............................................................15

*Hispanic Leadership Fund, Inc. v. Walsh,*
    __ F.Supp.3d ___, No. 1:12-cv-1337, 2013 WL 5423855,
    at *5 (N.D.N.Y. 2013) ......................................................................................20

*LaBounty v. Adler,*
    933 F.2d 121, 123 (2d Cir.1991).......................................................................20

*Macomb County Sav. Bank v. Kohlhoff,*
    5 Mich.App. 531, 147 N.W.2d 418, 419 (1967)..............................................26

*Martinez v. Bloomberg LP,*
    *740 F. 3d 211, 217 (2d Cir. Jan. 2014)* .........................................13, 14, 15, 16, 17, 19, 21

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1, 15,, 92 S.Ct. 1907 .........................................................................15

*National Elec. Systems, Inc. v. City of Anderson,* Ind.,
    601 F.Supp.2d 495, 497 (N.D.N.Y. 2009)........................................................20

*New Moon Shipping Co. v. MAN B & W Diesel AG,*
    121 F.3d 24, 29 (2d Cir. 1997)..........................................................................20

*Phillips v. Audio Active Ltd.*
    (494 F.3d 378 [2d Cic. 2007]) ....................................................................14, 17

*Powers v. Professional Credit Services, Inc.,*
    107 F.Supp.2d 166, 168 (N.D.N.Y. 2000) ......................................................20

*Rudman v. Cowles Commc'ns, Inc.*,
    30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972)................................................26

*Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    85 NY2d 173, 182 (1995) ....................................................................................................24

## STATEMENT OF FACT IN OPPOSITION[1]

### A.    Introduction.

By Complaint against the Defendant FireStream Worldwide Inc. ("Defendant FS" or "Defendant FireStream" or "Defendant") dated May 20, 2014 ("Complaint"), Plaintiff Gasland Petroleum, Inc. ("GS" or "Gasland") commenced this action to recover approximately $375,000.00 in monies paid to the Defendant arising from Defendant's improper and baseless breach of agreements with Gasland to provide Gasland with certain business/accounting/recordkeeping services/software/programs, as well as damages inflicted upon Gasland due to the Defendant's knowing and intentional fraud and misrepresentation about the quality and capabilities of the services/software/programs proposed by Defendant FireStream. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶ 1-2 Ex. A Complaint p. 1, 30-37). Gasland's Complaint was based upon both the March 26, 2012 proposal-agreement between the parties and the later signed Master Software License And Support and Services Agreement dated April 17, 2012 (a copy of which is attached to the Complaint at Ex. F), and subsequent separate agreement between Gasland and the Defendant dated April 22, 2014. *See* Id. at Ex. B (Nesheiwat Aff. Ex. A p. 31-36).

The Defendant previously moved to dismiss the Complaint on the grounds of *Forum Non Conveniens* by Notice of Motion dated July 22, 2014. *See* Plaintiff's Castiglione Opp. Aff. ¶ 3, Ex. A.   However, within the extended time allowed to respond to the Defendant's Motion to

---

[1] This memorandum refers to the Plaintiff's Affidavit of Rabee Nesheiwat in Opposition to Motion to Dismiss Amended Complaint for *Forum Non Conveniens* dated October 6, 2014 ("Plaintiff's R. Nesheiwat Opp. Aff."), and to the Plaintiff's Affirmation of Castiglione in Opposition to Motion to Dismiss Amended Complaint for *Forum Non Conveniens* by Joseph F. Castiglione Esq., dated October 6, 2014 ("Plaintiff's Castiglione Opp. Aff."), which provides the prior filed Affidavit of "Mitch" Nesheiwat in Opposition to Motion to Dismiss for *Forum Non Conveniens* by Majed Nesheiwat, dated August 20, 2014 ("Nesheiwat Aff.") at Ex. B and provides the prior filed, Plaintiff's Affidavit of Lisa Dixon in Opposition to Motion to Dismiss for *Forum Non Conveniens* dated August 22, 2014 ("Dixon Aff."), at Ex. C.   This memorandum also refers to the Defendant Firestream Worldwide, Inc.'s Memorandum of Law in Support of its Motion to Dismiss for *Forum Non Conveniens* dated September 12, 2014 ("Defendant MOL").

Dismiss, Gasland submitted papers in opposition to the Defendant's Motion to Dismiss but also filed its Amended Complaint dated August 22, 2014 ("Amended Complaint"). The Complaint asserted numerous allegations concerning the Defendant's separate failures to comply with the parties' April 22, 2014 letter-agreement, but did not include a separate claim for breach of that agreement by the Defendant. *See* Plaintiff's Castiglione Opp. Aff. Ex. ¶ 2, 5. After Gasland filed its Amended Complaint the Defendant formally withdrew its motion to dismiss the Complaint and then moved to dismiss the Amended Complaint on the same purported *Forum Non Conveniens* grounds, by Notice of Motion to Dismiss Amended Complaint for *Forum Non Conveniens* dated September 12, 2014. *See* Id. ¶ 7.

Gasland submits this memorandum in opposition to the Defendant's motion to dismiss the Amended Complaint based upon *Forum Non Conveniens,* which is again predicated upon a purported forum selection clause in the April 2012 License and Software Agreement; however that document was signed after the parties signed their initial March 26, 2012 proposal-agreement. The Defendant's motion must respectfully be denied as the purported forum selection provision is of no effect and was not "reasonably communicated" to Gasland under the circumstances, as is required to be enforceable. That provision also has no bearing on the separate April 22, 2014 letter-agreement as that agreement is a separate document with different terms. The Amended Complaint's new claim based upon that separate April 22, 2014 letter-agreement does not have any forum selection clause and is property before this Court.

**B.    Gasland's Interactions With the Defendant.**

Gasland is a company primarily in the business of petroleum supply and distribution, including as a wholesaler of petroleum and providing petroleum delivery services, and is located in Upstate New York (Kingston). *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶

3-8) and Ex. C (Dixon Aff. ¶3-19). In the early part of 2012, Gasland contacted the Defendant FireStream about FireStream providing software/programs that could possibly assist with Gasland's efforts to modernize and make Gasland's business, accounting and other record keeping operations more efficient. Former Gasland employees Bill Henry (now deceased) and Lisa Dixon investigated several possibilities for modernizing etc., Gasland's business, accounting and other record keeping operations, including reaching out to the Defendant. Ms. Dixon and Mr. Henry were the Gasland employees primarily dealing with this issue from the outset, as well as after Gasland contracted for services/products with Defendant FS. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶2, 20-22) and Ex. B (Nesheiwat Aff. ¶ 9-10).

When Gasland first spoke with the Defendant in early 2012, Gasland explained its business/accounting/recordkeeping operations to the Defendant and explained what needs Gasland was looking to address by possibly purchasing and using services/products from the Defendant. The Defendant in turn proposed to provide Gasland with the Defendant's "Ascend" Software/Program and certain supporting programs/modules to address Gasland's asserted needs. The Defendant was clear that the Defendant's "Ascend" Software/Product would easily address what Gasland was looking to do. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶22).

After initially talking in early 2012 about the possibility of providing certain software/programming, by letter dated February 23, 2012, the Defendant conveyed its proposed platform for addressing Gasland's business, accounting, and other recordkeeping needs. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶23). A copy of Defendant FireStream's letter proposal dated February 23, 2012 is attached to the Amended Complaint at Ex. A; *see also* R. Nesheiwat Opp. Aff. Ex. A (sub Ex. A). *See* Plaintiff's Castiglione Opp. Aff. Ex. B (*see*

Nesheiwat Aff. Ex. A) and Ex. C (Dixon Aff. Ex. A). As reiterated in the letter, the Defendant proposed to provide Gasland with its "Ascend" Software/Program and certain supporting programs/modules to address Gasland's business, operational, and other recordkeeping needs. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff ¶23 and Ex. A (sub Ex. A)); and R. Nesheiwat Opp. Aff. Ex. A (sub Ex. A).

As was consistent with the party's initial discussions, the Defendant's February 23, 2012 letter did not convey anything about lawsuits or lawsuits being in Missouri or New York. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. at ¶24 and Ex. A (sub Ex. A)).

In an effort to learn more about the Defendant and its proposal, Gasland and Defendant FireStream set up an appointment for the Defendant to make a presentation at Gasland's offices in Kingston, New York. In or about the week of March 16, 2012, the Defendant's President, Glenn Turner, and one of its employees, Vicki Johnson, came to Gasland's office in Kingston, New York, and did a presentation concerning Defendant's proposed products/systems. Besides Mr. Henry and Ms. Dixon, Gasland employees Mousa and Reheem Nesheiwat, Mike Smith, Thelma Golnek and Bassam Serdah, and two individuals from Gasland's CPA firm, attended the presentation by the Defendant. *See* Id. Ex. C (Dixon Aff. ¶25) and Ex. B (Nesheiwat Aff. ¶10).

During the presentation the Defendant asserted that it was aware of Gasland's operations and business/accounting/recordkeeping practices, and was unequivocal that the Defendant's Ascend Program/Software and supporting programs/modules could properly and fully address Gasland's business, operational, and other recordkeeping needs, and was able to be customized to address any business operations or record keeping needs. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶26). As part of the presentation the Defendant provided Gasland with a packet of information, which packet is attached to the Amended Complaint at Ex. B (R.

Nesheiwat Opp. Aff. Ex. A (sub. Ex. B)). The Defendant represented that training for Gasland employees on the Ascend Software/Program and supporting programs/modules could be conducted and completed in a reasonable amount of time by the Defendant, over the course of several months.  The Defendant stated that training would be performed by the Defendant at Gasland's offices in Kingston, New York, and over the internet. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶26).

At no point during the presentation did the Defendant FS mention lawsuits involving the underlying products/services, or convey that any lawsuits would have to be brought in Missouri or were to be controlled by Missouri law. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶27) and Ex. B (Nesheiwat Aff. ¶10).

After the March 2012 presentation there were additional discussions between Gasland and the Defendant about what programs/services would be needed/provided by Defendant. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶28).  The Defendant provided an updated proposal to Gasland by letter dated March 16, 2012, a copy of which is attached to the Amended Complaint at Ex. C, and then another updated proposal by letter dated March 19, 2012, a copy of which is attached to the Amended Complaint at Ex. D (R. Nesheiwat Opp. Aff. Ex. A [sub Exs. C, D]); *see also* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶ 28, Ex. A (sub Ex. C)). Consistent with the parties ongoing discussions, the Defendant's March 16 and 19, 2012 letter proposals did not convey anything about lawsuits or lawsuits being in Missouri or New York. *See* Id.

As the possible costs being discussed by Gasland and the Defendant for Defendant's services/products were very significant, Gasland's President and principal owner, Mr. (Mitch) Nesheiwat, was needed to approve the proposed transaction with the Defendant. *See* Plaintiff's

Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶11) and Ex. C (Dixon Aff. ¶29).  The plain language of the March 19, 2012 proposal is clear there is nothing about lawsuits being in Missouri only, or Missouri law applying to any disputes between Gasland and Defendant FS. Mr. Nesheiwat signed the proposal on March 26, 2012 ("proposal-agreement").  *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. Ex. A (sub Ex. D-E)).

Gasland then forwarded along the signed proposal-agreement to the Defendant FS by letter dated March 29, 2012, a copy of which is attached to the Amended Complaint at Ex. E. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶12) and Ex. C (Dixon Aff. ¶30 (Ex. A [sub Ex. E])); *see also* R. Nesheiwat Opp. Aff. Ex. A (sub Ex. E).  The letter from Gasland does not include anything about lawsuits being in Missouri or Missouri law otherwise applying to any disputes with the Defendant FS; and Gasland provides affidavit testimony from Mr. Nesheiwat and Ms. Dixon that it was never raised by the Defendant with Gasland. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶2, 11, 13) and Ex. C (Dixon Aff. ¶2, 51).  The letter also reflects the time-lines and terms for the Defendant FS to provide its product/services to Gasland. Those terms included Gasland requesting October 1, 2012, as the date to run Gasland's then existing business/accounting and other record keeping programs with the Defendant FireStream Software/Program, and Gasland's requirement to be able to "go live" with the Defendant's programs/software/modules, by January 1, 2013. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶30 and Ex. A (sub Ex F)). By the phrase "go live", Gasland and the Defendant meant that would be the date Gasland would be fully operating under the Ascend Software/Program and supporting programs/modules. *See* Id.  Gasland also conveyed to Defendant FireStream that it wanted to test operations of all of the provided software/programs

between October 1, 2012 and December 31, 2012, to make sure any problems/issues were addressed before January 1, 2013.  *See* Id.

   After Gasland's March 29, 2012 letter to the Defendant, the Defendant prepared and provided Gasland with its Master Software License And Support and Services Agreement, which was later signed by Mousa Nesheiwat, Mr. (Mitch) Nesheiwat's son, on April 17, 2012 ("License and Support Agreement") (a copy of which is attached to the Amended Complaint at Ex. F). *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶13, Ex. A (sub Ex. F)) and Ex. C (Dixon Aff. ¶31); *see also* R. Nesheiwat Opp. Aff. Ex. A (sub Ex. F).  As part of its initial motion to dismiss Gasland's Complaint, the Defendant alleged that at some point it had alleged dealings with Gasland about changing certain terms of the subsequently signed License And Support Agreement, allegedly concerning lawsuits and whether they would be in Missouri or New York; and the Defendant again asserts such on its current motion to dismiss the Amended Complaint. *See* Defendant MOL p. 3-5; *see also* Plaintiff's Castiglione Opp. Aff. Ex. A (Defendant Turner Aff. p. 2).  Gasland however provides affidavit testimony from its President, Mitch Nesheiwat, and the primary Gasland person dealing with the Defendant, Lisa Dixon, that they are not aware of any such alleged discussions or changes and were otherwise not aware of any provisions about lawsuits being in Missouri or New York being put in that document in the first instance. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶2, 13-15) and Ex. C (Dixon Aff. ¶2, 31, 51). That issue was never communicated by the Defendant to Gasland during their lengthy discussions before the March 26, 2012 signed proposal-agreement, or after for the later signed License and Support Agreement.  The Defendant failed to address the prior affidavit testimony from Gasland that previously demonstrated that Gasland did not have any such discussions; and the Defendant again has failed to provide any affidavit testimony providing

7

specific allegations as to whom the Defendant allegedly had these discussions with at Gasland. *See generally* Plaintiff's Castiglione Opp. Aff. Ex. A (Defendant Turner Aff. p. 2-3).

**C.    The Defendant's Defective Products/Services.**

The Defendant began to work with Gasland on implementing the Ascend Software/Program and supporting programs/modules as part of Gasland's operations in April 2012. However, after several months, Gasland began to and thereafter continuously experienced significant problems with the Ascend Program/Software and supporting modules/software. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. p. 11-15). As detailed in the Amended Complaint and supporting Dixon Aff., Gasland encountered significant and continued problems with the Defendant's software/product, and was required to keep double books in order to maintain accurate business/operations/accounting records. For nearly 12 months approximately five Gasland employees were required to work a double work load to enter data into the Defendant FireStream programs/software/modules, and to continue training on the FireStream System/Program, while maintaining Gasland's daily operations using Gasland's prior business/accounting/other record keeping system. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. p. 11-12; *See generally* Dixon Aff. Ex. A), and R. Nesheiwat Aff. Ex. A (Amended Complaint).

Because of the constant problems with the Defendant's software/programs/modules, Gasland exceeded the time allotted for time for training that was provided in the March 26, 2012 proposal-agreement. Gasland entered into a supplemental agreement for 80 more hours of onsite training with the Defendant assigned representative. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶42-43). A copy of the agreement dated March 15, 2013 between Gasland and

Defendant FireStream is attached to the Amended Complaint at Ex. G. *See* R. Nesheiwat Opp. Aff. Ex. A (sub Ex. G).

Gasland would frequently contact Glen Turner, the owner of Defendant FireStream, to convey the significant problems Gasland was encountering with Defendant FireStream's programs/software and services, and request assistance and support from the Defendant to actually achieve a "go live" date. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶¶44-45). For example, attached to the Amended Complaint at Ex. H is a copy of an email from Gasland to Glen Turner dated April 4, 2013. By this email Gasland complained to the Defendant about the failure to "go live" by January 1, 2013, and requested an outline and/or implementation plan to complete all of the components of Defendant's Programs/Software, among other things. Gasland made a similar complaint and request a few months later by email dated June 14, 2013, a copy of which is attached to the Amended Complaint at Ex. I. *See* R. Nesheiwat Opp. Aff at Ex. A (Sub Exs. H-I).

Implementing the program/software was an ongoing problem with nothing but excuses from the Defendant. Gasland was not able to actually begin inputting its business/accounting/operational data into the Ascend Program/Software and supporting programs/modules until the middle of 2013, well past the agreed to "go live" date of January 2013. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶46).

Ultimately, after experiencing numerous and ongoing problems with the Defendant's defective Software/programs/services, as of November 2013, Gasland had not been able to "go live." The Defendant had simply not provided Gasland with the working system/program as promised in the signed proposal-agreement. At or about that time, due to significant program problems Gasland continually encountered with the Ascend Program/Software and supporting

9

programs/software, Gasland was no longer able to incur the significant financial burden or commit the additional employee resources to trying to resolve the problems with Defendant FireStream's programs/software/modules. *See* Id. at p. 13-14.

**D.**    **The April 22, 2014 Letter-Agreement.**

As explained by Gasland, it was clear as of 2014 that the Defendant had failed to comply with the March 26, 2012 proposal-agreement or the April 2012 License and Support Agreement, *See* R. Nesheiwat Opp. Aff ¶ 3-5.  Gasland proceeded to have discussions with the Defendant about getting its money back from the Defendant and/or litigation with the Defendant. *See* Id. ¶ 5.  In an effort to try to work things out with the Defendant, in April 2014 Gasland and the Defendant discussed new terms for the Defendant to provide Gasland with a working product that could address Gasland's needs; however Gasland was clear that such would need to be accomplished within a period of 60 days, with the Defendant meeting certain milestone accomplishments during that 60-day period. *See* Id.  Gasland was clear it did not want to continue with the terms of the prior March 26, 2012 proposal-agreement or the subsequent April 2012 License and Support Agreement. *See* Id ¶ 5, 8.  The Defendant further had redesigned its product/software and would be providing its new product as part of its offer for the proposed new transaction with Gasland. *See* Id. at ¶5-6.  The foregoing agreement was reflected in the new proposal from the Defendant dated April 22, 2014, which was signed by Gasland and the Defendant on May 1, 2014.  A copy of that April 22, 2014 (signed May 1, 2014) letter-agreement is attached to the Plaintiff's Castiglione Opp. Aff. Ex. C (at Dixon Aff. at Ex. B) and the R. Nesheiwat Opp. Aff. Ex. B. That April 22, 2014 letter-agreement is a separate agreement with a separate purpose (forego litigation or repayment of money), involved separate consideration and, had separate payment terms.  *See* R. Nesheiwat Opp. Aff. ¶ 5-8, Ex. B. p. 3.

It also included the 60-day window and milestone accomplishment terms not previously provided for in the parties' prior agreements. The April 22, 2014 letter-agreement also does not contain any choice of law or forum clause; nor was one every discussed by the Defendant. *See* Id. ¶ 7, Ex. B.

Within a few weeks, in or about mid-late May 2014, the Defendant had failed to meet the agreed to milestones and otherwise failed to provide a working program/software/module as was promised by the Defendant. The Defendant FireStream rather requested an extension of time to figure out issues it was confronting with its re-designed program/software and supporting modules/programs. That was the same story and ongoing experience with the Defendant however, from April 2012 to May 2012. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶ 50); R. Nesheiwat Opp. Aff. ¶ 9.

E.    **This Litigation.**

After providing the Defendant with a significant amount of time after the January 1, 2013 "go live" date that the parties had otherwise agreed would be when Gasland would be fully operating its business/accounting/operations on the Defendant's Software/Programs, including signing a separate agreement in lieu of litigation or a refund on May 1, 2014 for the provision of the working products/services within a 60 day period and with different payment schemes, Gasland commenced this action to recover the approximately $375, 000 in monies paid to the Defendant for its defective product/services. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. Ex. A); R. Nesheiwat Opp. Aff. Ex. A. As further shown below, as a matter of law, because the purported forum selection clause in the License and Support Agreement was not "reasonably communicated" to Gasland in the numerous communications and written proposals from the Defendant, including not being identified in the March 26, 2012 signed proposal-

agreement, nor when the parties were discussing the terms of a separate agreement subsequently embodied in the April 22, 2014 letter-agreement, Gasland commenced this action in the federal District Court of the Northern District of New York, in accordance with case law in the Second Circuit.

By "Motion to Dismiss for *Forum Non Conveniens*" dated July 22, 2014, and "Notice of Motion to Dismiss for *Forum Non Conveniens*" dated July 22, 2014, the Defendant previously moved to dismiss Gasland's Complaint "on F*orum Non Conveniens* grounds without prejudice to Gasland's refiling of its complaint in Missouri State Court." Plaintiff's Castiglione Opp. Aff. ¶ 3 and Ex. A. The Defendant's Motion to Dismiss the Complaint relied upon factual allegations solely provided by the "Declaration of James Glenn Turner" dated July 22, 2014 ("Defendant Turner Aff."). The Defendant's motion to dismiss was predicated upon language in the subsequently signed April 2012 License and Software Agreement, which purportedly provides that any dispute between Gasland and the Defendant under the license and support agreement be brought in the "Courts of the State of Missouri[.]" *See* Plaintiff's Castiglione Opp. Aff. Ex. A (Defendant Turner Aff. ¶4-5); *see also* Defendant MOL, pp. 3 – 10. The Defendant, however, asserted that the purported forum selection clause in the subsequent License and Support Agreement was fully conveyed to Gasland but also was allegedly negotiated in part by Gasland; and the Defendant asserts such again on the instant motion to dismiss. *See* Plaintiff's Castiglione Opp. Aff. Ex. A (Defendant Turner Aff. ¶ 4-5); *see also* Defendant MOL, p. 5-6. Gasland previously submitted the Nesheiwat and Dixon affidavits in opposition to the Defendant's first motion to dismiss, which affidavit testimony (plus the plain terms of the correspondence between the Defendant and Gasland), however, refuted those allegations. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶11-15) and Ex. C (Dixon Aff. ¶22-31, 51). Further, Gasland noted

that the March 26, 2012 proposed-agreement and separate April 22, 2014 letter-agreement did not contain any choice of law or forum select language, which the Defendant didn't previously dispute. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶ 27-30).

Apart from submitting the Nesheiwat and Dixon Affs. and otherwise opposing the Defendant's motion to dismiss the Complaint, Gasland separately field its Amended Complaint in response to the Defendant's motion to dismiss. *See* Plaintiff's Castiglione Opp. Aff. ¶5. The Defendant then formally withdrew its prior motion to dismiss the Complaint and refiled its motion to dismiss based upon purported *Forum Non-Conveniens* as to the Amended Complaint. *See* <u>Id</u>. ¶ 7.

As shown above and established below, the Court must respectfully deny the Defendant's motion because the Defendant must first show that the purported forum select "clause was reasonably communicated to the party resisting enforcement," i.e., to Gasland, which the Defendant failed to do based upon the specific circumstances here, but also because Gasland has showed that, based upon the initial party discussions, the Defendant's in person presentation at Gasland's offices, the ongoing discussions and the several draft proposals from the Defendant, including the March 26, 2012 proposal-agreement, the Defendant did not reasonably communicate any forum selection issue with Gasland. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. Jan. 2014). Rather, it appears to have only been raised after the parties had a binding agreement in the first instance, by the March 26, 2012 proposal-agreement. Further, there is no such provision in the separate April 22, 2014 letter-agreement between Gasland and the Defendant. That agreement has a separate purpose, different terms and different consideration, and therefore is a separate agreement and must be read and treated independently from the parties' earlier agreements. There is no legal basis to dismiss Gasland's separate claim

in the Amended Complaint based upon breach of that separate April 22, 2014 agreement for *Forum Non Conveniens*, as there are no choice of law provisions in that agreement and reading such a provision in to that document is prohibited by established principles of contract interpretation. As such, based upon the above and other arguments below, the Court respectfully must deny the Defendant's motion to dismiss and deem the purported forum selection clause non-enforceable, and otherwise non-applicable to Gasland's claims in the Amended Complaint.

**ARGUMENT**

**POINT I**

**THE PURPORTED FORUM SELECTION CLAUSE WAS NOT "REASONABLY COMMUNICATED" TO GASLAND AND IS OTHERWISE NOT ENFORCEABLE.**

**A.**    **The Legal Standard for Determining Enforceability of Forum Select Clauses.**

Even though the parties initial March 26, 2012 proposal-agreement does not contain any such language, the Defendant moves to dismiss the Amended Complaint based upon the purported forum selection clause in the subsequent License and Support Agreement, asserting that "'[T]he appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *Forum Non Conveniens*.'" *See* Defendant MOL p. 4. However, citing its decision in *Phillips v. Audio Active Ltd.* (494 F.3d 378 [2d Cic. 2007]), the Second Circuit Court of Appeals recently made clear in *Martinez v. Bloomberg LP* (January 2014) that, in reviewing the propriety of a motion to dismiss "a claim based on a forum selection clause, [the Court must] employ a four-part analysis. We ask: (1) 'whether the clause was reasonably communicated to the party resisting enforcement'; (2) whether the clause is 'mandatory or permissive, i.e., ... whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so'; and (3) 'whether the claims and parties involved in the suit are subject to the forum selection clause.'" *See* 740 F.3d 211, 217. The Court of Appeals, however,

14

extrapolated that "[a] party can overcome this presumption only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.' *Id.* at 383–84 (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972))." *See* Id.

Relative to determining the enforceability of a forum selection clause (like the purported clause raised by the Defendant), the Second Circuit in *Martinez v. Bloomberg LP* was clear that federal law, not the law of the forum identified in the forum selection clause, governed the court's review. Specifically, the Court of Appeals held that "[t]he overriding framework governing the effect of forum selection clauses in federal courts[] is drawn from federal law. Furthermore, 'federal law should be used to determine whether an otherwise mandatory and applicable forum clause is *enforceable* under *Bremen,* i.e., step four in our analysis.'" *See* Id. The Court reasoned as follows:

> "If the enforceability of a forum selection clause were governed by the law specified in the choice-of-law clause, then contracting parties would have an absolute right to oust the jurisdiction of the federal courts. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.,* 145 F.3d 505, 509–10 (2d Cir.1998) (even if forum selection clause is mandatory, court must determine whether enforcement would be unjust or [whether] the clause [wa]s invalid for such reasons as fraud or overreaching under *Bremen* before granting motion to dismiss). Federal law must govern the ultimate enforceability of a forum selection clause to ensure that a federal court may decline to enforce a clause if trial in the contractual forum [would] be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court, or if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. *Bremen,* 407 U.S. at 18, 15, 92 S.Ct. 1907."

*See* Id. at 218(internal quotations omitted).

15

As such, "[t]o ensure that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses, therefore, federal law must govern their enforceability." Id. at 220.

**B.** **The Forum Clause Was not "Reasonably Communicated" and is Not Enforceable.**

Here, the Defendant acknowledges that it has the burden as the "movant [to] demonstrate that the forum clause 'was reasonably communicated to the party resisting enforcement,'" i.e., Gasland. *See* Defendant MOL p. 4. The Defendant then claims, however that "the forum selection clause here was reasonably communicated to [Gasland]," based upon the term being included in the later signed License and Support Agreement. *See* Defendant MOL p. 4. As made clear by Gasland's President, Mitch Nesheiwat, and Gasland's former employee Lisa Dixon, who was the person primarily having the initial discussions with the Defendant and then working to implement the Defendant's defective software/programs at Gasland, the Defendant did not communicate the purported forum selection clause in its initial discussions with Gasland, did not communicate any such provision during its presentation made at Gasland's offices in Kingston, New York, in March 2012, and did not communicate any such provision in the several draft written proposals that the Defendant prepared and provided to Gasland, including not communicating any such provision in the proposal-agreement signed by Gasland's President Mitch Nesheiwat authorizing the underlying transaction in March 2012.

The Defendant's assertion that "under Missouri law, the forum selection clause here was reasonably communicated" to Gasland (*see* Defendant MOL p. 4 [emphasis added]), ignores the Second Circuit Court of Appeals' direction in *Martinez v. Bloomberg LP* that, "[t]o ensure that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses, [that] federal law

must govern their enforceability." *See* 740 F.3d 211, 220 (emphasis added). Relevant here, federal law, as promulgated by the Second Circuit, requires that courts make a determination as to whether, under the circumstances, "the clause was reasonably communicated to the party resisting enforcement[.]'" *See* 740 F.3d 211, 217. As the Defendant and Gasland had multiple conversation and discussions before the later signed License and Support Agreement, and the Defendant did a presentation at Gasland's offices in Kingston, New York, about its proposed services before that Agreement, and the Defendant further prepared multiple draft proposals about the proposed transaction, and the Defendant never communicated during or as part of any of these interactions with Gasland that there would be any forum selection issue, under the circumstances here, the Defendant failed to "reasonably communicate[]" the existence of such a clause to Gasland. *See also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)(reiterating that "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement."). The fact that the Defendant included such a clause after there was a binding agreement by the proposed-agreement from March 26, 2012, is telling.

The Defendant's reliance on Missouri contract law as allegedly establishing the validity of the purported forum selection clause, on the basis that it was merely included in the later signed License and Support Agreement, is of no value. Rather, "Federal law must govern the ultimate enforceability of a forum selection clause to ensure that a federal court may decline to enforce a clause if trial in the contractual forum [would] be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court, or if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *See Martinez*, 740 F.3d 211, 218. Here, as the Defendant gave an in person presentation to Gasland in Kingston, New York, had multiple

communications/correspondence with and provided several written proposals to Gasland before the subsequent License and Support Agreement, which communications, proposals and in person presentation did not convey or remotely raise any forum selection issues, the clause was not "reasonably conveyed" to Gasland.  Relying on general contract law principles to allegedly show that Gasland had assumed knowledge of the term is irrelevant as federal case law is clear that there is a different standard required to be met for "reasonably communicating" such provisions. Using general contract principles would completely negate the federal "reasonable communication" standard. Using the actual standard, the clause is not enforceable under the facts here.

The Defendant further asserts, however, that "the forum selection clause in this instance was negotiated by the parties." *See* Defendant MOL p. 5. The Defendant alleges that "at Gasland's request, FireStream agreed to modify its standard agreement, which provides that Missouri courts have exclusive jurisdiction over any lawsuit commenced between the parties," to allegedly allow for lawsuits by the Defendant against Gasland to be mandated in New York State. *See* Defendant MOL p. 5-6.  The Defendant's proffered evidence in support of that claim is the affidavit of the Defendant's President and Owner Glenn Turner (¶ 4-5) dated July 22, 2014; *see also* Defendant MOL p. 2 fn 1, and p. 5-6. In his affidavit however, Mr. Turner fails to provide any specifics as to who was involved with the alleged discussions about modifying the purported forum selection clause.

The Defendant previously made this exact allegation on its prior motion to dismiss the initial Complaint. *See* Plaintiff's Castiglione Opp. Aff. Ex. A (Glenn Turner Aff. ¶4-5).  Gasland previously submitted the Nesheiwat and Dixon Affs. in opposition to Turner's allegations, which directly stated there were no such conversations with Gasland and the Defendant never raised

18

such an issue with Gasland. *See* Plaintiff's Castiglione Opp. Aff. Ex. B (Nesheiwat Aff. ¶10-15) and Ex. C (Dixon Aff. ¶21-30, 51). The Defendant's second motion to dismiss based upon *Forum Non Conveniens* fails to address Gasland's prior showing that there were never any such discussions about lawsuits.

As admitted by the Defendant, "[u]nder federal law, a forum selection clause is unenforceable on fraud grounds only if the 'inclusion of that clause in the contract was the product of fraud.'" *See* Defendant MOL p. 9; *see also Martinez v. Bloomberg LP*, 740 F.3d 211, 217(stating that "A party can overcome [any] presumption [of validity of a forum selection clause] only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"). Relative to the Defendant's argument that such provision was allegedly known and in fact negotiated by Gasland, by the affidavits from Gasland's President Mitch Nesheiwat, the person that signed the proposal-agreement on March 26, 2012, and former Gasland employee Lisa Dixon, who was primarily responsible and in charge of the discussions and implementation of the later agreed to services/products with the Defendant, the Defendant never raised such an issue and no one at Gasland is or was aware of any forum selection clause or alleged negotiations about such a provision. *See* Plaintiff's Castiglione Opp. Aff. Ex. B; Ex. C (Nesheiwat Aff. ¶2, 13-15); *see also* Dixon Aff. ¶2, 31, 51). As such, it appears that the inclusion of such a clause was based upon fraud and or misrepresentation by the Defendant. Further, the Defendant fails to consider that maybe, if negotiated, Gasland asked for any and all lawsuits regardless of or by who, to be in the New York State.

Regardless, the law is clear that upon a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), "[i]n assessing the sufficiency of a pleading, 'all factual allegations in the

complaint must be taken as true,' and all reasonable inferences must be construed in favor of the plaintiff." *See Powers v. Professional Credit Services, Inc.*, 107 F.Supp.2d 166, 168 (N.D.N.Y. 2000) (internal citations omitted), quoting *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *see also Hispanic Leadership Fund, Inc. v. Walsh*, __ F.Supp.3d ___, No. 1:12-cv-1337, 2013 WL 5423855, at *5 (N.D.N.Y. 2013) (reiterating that "On a motion to dismiss pursuant to [FRCP Rule 12(b)(1)], the non-conclusory factual allegations in the complaint, unless contradicted by evidence, are taken as true and all reasonable inferences drawn from those factual allegations are construed in favor of the plaintiff."); *National Elec. Systems, Inc. v. City of Anderson*, Ind., 601 F.Supp.2d 495, 497 (N.D.N.Y. 2009) (On a motion the dismiss pursuant to FRCP 12(b)(2), "all pleadings and factual ambiguities are construed in favor of the plaintiff."). Further, <u>as to determining the enforceability of a forum section clause specifically</u>, the Second Circuit is clear that, for a party like Gasland contesting a forum select provision, their "burden [of proof] is analogous to that which is imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). The Second Circuit Court of Appeals in *New Moon Shipping* explained that, to meet that burden "at the initial stage of litigation, a party seeking to establish jurisdiction need only make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction," adding that <u>"[w]hen analyzing this preliminary showing, the facts must be viewed in the light most favorable to the plaintiff."</u> *See* <u>Id.</u> (emphasis added). The Second Circuit was ultimately clear that "[b]ecause the same risk of loss of plaintiff's chosen forum may be at issue in the forum selection context, a party seeking to avoid enforcement of such a contractual clause is also entitled to have

the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard." *See* Id.

Viewing the facts in light most favorable to Gasland and accepting as true Gasland's factual allegations in the Nesheiwat and Dixon Affs., that there was no negotiating of the purported forum section clause regarding Missouri, and the issue was otherwise never raised in the many discussions and proposals provided to Gasland, the purported forum selection clause was not communicated to Gasland—at all, let alone reasonably communicated or otherwise allegedly negotiated by the Defendant. Rather, the language was tucked away in a secondary document, after the initial proposal-agreement was signed on March 26, 2012.

## C.   Enforcement is Unreasonable or Unjust.

As stated by the Second Circuit Court of Appeals in *Martinez v. Bloomberg LP* (740 F.3d 211, 217), "A party can overcome [any] presumption [of validity of a forum selection clause] by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust[.]'" Here, based upon the equities of the matter, enforcing the forum section clause against Gasland would also be both unreasonable and unjust.

Gasland has provided the Court with the proposal-agreement dated March 26, 2012, and the March 29, 2012 letter conveying Gasland's acceptance of the proposal-agreement. The March 29, 2012 letter, as supported by the affidavit of former Gasland employee Lisa Dixon, establishes that the Defendant agreed to provide Gasland with working software/programs and have Gasland operating its business/accounting/record keeping operations running on that software/programs by January 1, 2013, the "go live" date. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶30 Ex. A [Sub Ex. E], and ¶45 and Ex. A [Sub Exs. H-I]). Gasland has provided affidavit testimony from former employee Lisa Dixon, the Gasland person with

primary responsibility for working with the Defendant to have the software/programs implemented, stating that, as of November 2013, the Defendant FireStream had not provided Gasland with the working system/program as promised in the signed Defendant FireStream March 2012 proposal or the late signed License Agreement, even though Gasland paid approximately $375,000 to the Defendant for what was supposed to be working software/programs as of January 1, 2013. *See* Id. Ex. C (Dixon Aff. p. 11-13, and ¶2).  That affidavit testimony is further supported by letters from Gasland asserting such as of April 4, 2013 and June 14, 2013. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. Ex. A [Sub Exs. H-I]). Gasland further provides the April 22, 2014 letter-agreement, which was agreed to and signed by both Gasland and the Defendant on May 1, 2014, in which the Defendant admitted that its software/programs were not working as of May 1, 2014, and that the Defendant had separately obligated itself to provide working software/programs within 60 days. *See* Id. Ex. C (Dixon Aff. p. 14, Ex. B); *see also* R. Nesheiwat Opp. Aff. ¶ 5-8 Ex. B.  Ms. Dixon and Rabee Nesheiwat now provide affidavit testimony that the Defendant again failed to perform its obligations and provide the underlying working software/programs to Gasland. *See* R. Nesheiwat Opp. Aff. ¶9; Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶ 50). Based upon that alone, requiring Gasland to expend more monies to have this matter tried in Missouri, far away from Gasland's witnesses located in Kingston, New York area, "would be unreasonable or unjust[.]"

Gasland has further demonstrated that Lisa Dixon and Bill Henry, now deceased, are no longer employed by Gasland. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. p. 15); and Ex. B (Nesheiwat Aff. ¶14-16, ¶11); *see also* R. Nesheiwat Opp. Aff. ¶ 11.  As Ms. Dixon is the primary person that dealt with the issues and implementation of the Defendant's defective software/programs, but has a new job and can't take time away from her job to attend trial etc. in

22

Missouri, "it would be unreasonable or unjust" to force Gasland to litigate the issue in Missouri because its primary witness is no longer in the employment and control of Gasland; and it would certainly be unjust and unreasonable for Ms. Dixon to be forced to pay to travel to Missouri. Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶51-52).

Lastly, the Court should consider in its determination of what is "unreasonable or unjust", that there is a separate and distinct agreement between Gasland and the Defendant which the Defendant breached. The legal argument about that April 22, 2014 letter-agreement being a separate and distinct agreement but subject to any forum selection clause is addressed in Point II, below. In an effort to try to work things out with the Defendant one last time and avoid litigation, in April 2014, the Defendant agreed to provide Gasland with a proper working system/program, within a period of 60 days, meeting certain milestone accomplishments during that 60-day period. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. p. 14, Ex. B); *see also* R. Nesheiwat Opp. Aff. ¶5-8 Ex. B. The foregoing agreement was reflected in the new proposal from the Defendant dated April 22, 2014, which was signed by Gasland and the Defendant on May 1, 2014. *See* Id. at ¶ 5-8 and Ex. B. However, within a few weeks, in or about mid-late May 2014, the Defendant failed to meet the agreed to milestones and otherwise failed to provide a working program/software/module as was promised by the Defendant. The Defendant FireStream rather requested an extension of time to figure out issues it was confronting with its program/software and supporting modules/programs. *See* Plaintiff's Castiglione Opp. Aff. Ex. C (Dixon Aff. ¶50); *see also* R. Nesheiwat Opp. Aff. ¶ 9.

Based upon the April 22, 2014 agreement and the Defendant's breach, Gasland amended its existing Complaint to assert a claim under that agreement. That agreement does not have any such forum selection clause or choice of law provision. Gasland is well within its rights to seek

enforcement of that agreement in this Court or by entirely separate litigation in New York, and it is unjust to require that claim be litigated in Missouri.

## POINT II

**THE APRIL 22, 2014 LETTER-AGREEMENT IS A SEPARATE LEGAL AGREEMENT AND NOT SUBJECT TO ANY FORUM SELECTION CLAUSE.**

The Defendant now attacks Gasland's Amended Complaint and its separate claim based upon the Defendant's breach of the April 22, 2014 letter-agreement. The Defendant's assertion that "Gasland is clearly attempting to evade the broad language of the forum section clause [from the April 2012 License and Support Agreement] by artfully adding the new May 2014 breach of contract claim", completely ignores that the April 22, 2014 letter-agreement is a separate agreement and is not subject to the purported terms of the License and Support Agreement (which forum selection terms are not-enforceable as they were not reasonably communicated to Gasland, regardless). The Defendant is wrongfully seeking to read terms in to the April 22, 2014 letter-agreement that were not discussed or agreed to by Gasland.

New York contract jurisprudence is clear that "[w]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations[.]" *See 131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 82 AD3d 1188, 1189 (2d 2011). Under such circumstances "[t]he court's role is limited to interpretation and enforcement of the terms agreed to by the parties, and the court may not rewrite the contract or impose additional terms which the parties failed to insert[.]" *See* Id. (holding that "Here, the amount of the down payment as set forth in the contract was $425,000 and, pursuant to the contract, the plaintiffs were permitted to recover that amount in the event of a default by the defendant"); *see also Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 85 NY2d 173, 182 (1995)

(in applying the standard that "The court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms," the New York Court of Appeals held in the matter before it that to "read into the NYSE Rules a provision authorizing compulsory expedited arbitration would be to fundamentally modify the terms of the parties' contract and force respondent to arbitrate in a manner contrary to the agreement to which it has assented").

Rather than artful pleading to avoid a forum selection clause, the April 22, 2014 letter-agreement is a separate and distinct agreement that supports a separate and viable claim against the Defendant for breach of contract. Initially, the April 22, 2014 letter-agreement had the purpose of having the Defendant provide a working system for Gasland but importantly it was to be provided within a set 60 day period, with the Defendant meeting certain milestones for demonstrating is actual progress. *See* R. Nesheiwat Opp. Aff. ¶ 5-8 Ex. B. The earlier March 22, 2012 and April 2012 agreements did not have such standards of performance, and rather required that Gasland "go live" as of January 1, 2013. The new April 22, 2014 letter-agreement was clearly different as it was providing that Gasland would "go live" by end of June 2014-early July 2014. *See* Id. Ex. B. p. 3-4. The Defendant was further clear that "Firestream had re-designed the Consigned Station module based upon feedback from Gasland and other customers" and was now proposing to convert Gasland to its new Consigned Station module 2. *See* Id. Ex. B p.1. That redesigned program was not provided for in the initial March or April 2012 agreements between Gasland and the Defendant. Lastly, on page 4 of the April 22, 2014 letter-agreement, the document stated "AGREEMENT The parties agree to the following", and provided a new payment scheme between the parties. *See* Id. p. 5.

As recognized by New York courts, "'one agreement may follow from and even have as its raison d'etre another and yet be independently enforceable'" and "in the absence of some clear indication that the parties had a contrary intention, contracts manifesting separate assents to be bound are generally presumed to be separable[.]'" *See Applehead Pictures LLC v. Perelman*, 80 AD3d 181, 189 (1st Dept 2010) (holding that agreements at issue were not intended to be interdependent). As similarly stated by the Second Circuit Court of Appeals, "multiple agreements may be read as one contract only if the parties so intended, which we determine from the circumstances surrounding the transaction. *See Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972); *Macomb County Sav. Bank v. Kohlhoff*, 5 Mich.App. 531, 147 N.W.2d 418, 419 (1967)." *See Arciniaga v. General Motors Corp.*, 460 F.3d 231, 237 (C.A. 2 2006)(holding that "The circumstances here do not evince an intent by the parties to interpret the Amended Stockholders agreement and the Dealer Agreement as one contract.").

The April 22, 2014 letter-agreement clearly was intended to serve a separate purpose: set a definite 60-day timeline for the Defendant to provide a working product (its redesigned product) while meeting set milestones, and establish a different payment schedule. The accompanying R. Nesheiwat Opp. Aff. (¶5) is clear that Gasland refused to continue with the terms of the prior agreements that the Defendant had breached.   The April 22, 2014 letter-agreement did not make a single reference to the parties' earlier agreements and did not contain any forum section clause. In fact, if the Defendant had complied with the April 22, 2014 letter-agreement but it was Gasland that breached by not paying the Defendant, the Defendant would have to seek payment by suing under the terms of the April 22, 2014 letter-agreement as  the prior agreements were no longer controlling as the payment terms had changed.  As the April 22,

2014 letter-agreement is clear and unambiguous that it did not include any forum selection clause and was a separate "AGREEMENT" as was drafted by the Defendant, "the court may not rewrite the contract or impose additional terms which the parties failed to insert" concerning any forum selection clause.

## CONCLUSION

Based upon the purported forum selective clause not being "reasonably communicated" under the circumstance here, and otherwise upon the foregoing argument, Gasland respectfully requests that the Court deny the Defendant's motion to dismiss for alleged *Forum Non Conveniens* in its entirety as the clause is not enforceable, and that the Court respectfully further provide Gasland such other and further relief deemed just and proper, including, fees, costs and equitable relief.

Dated: October 7, 2014
      Albany, New York                 YOUNG/SOMMER LLC

                                    By: _____
                                       Joseph R. Castiglione, Esq.
                                       Dean S. Sommer, Esq.
                                       Attorneys for Plaintiff
                                       Executive Woods
                                       5 Palisades Drive
                                       Albany, NY 12205
                                       Tel (518)438-9907
                                       Fax (518) 438-9914
                                     jcastiglione@youngsommer.com
                                     Bar Roll: 512406
                                     Bar Roll: 102643
                                     dsommer@youngsommer.com