UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GASLAND PETROLEUM, INC.,

                    Plaintiff,

  -v-                                    1:14-CV-597

FIRESTREAM WORLDWIDE, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| YOUNG, SOMMER LAW FIRM<br>Attorneys for Plaintiff<br>Executive Woods<br>Five Palisades Drive<br>Albany, NY 12205 | DEAN S. SOMMER, ESQ.<br>JOSEPH F. CASTIGLIONE, ESQ. |
| GREENSFELDER, HEMKER LAW FIRM<br>Attorneys for Defendant<br>10 South Broadway, Suite 2000<br>St. Louis, MO 63102 | LIZABETH M. CONRAN, ESQ. |
| HINMAN, STRAUB LAW FIRM<br>Attorneys for Defendant<br>121 State Street<br>Albany, NY 12207 | JAMES T. POTTER, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

    Plaintiff Gasland Petroleum, Inc. ("Gasland" or "plaintiff") filed this diversity action

against defendant Firestream Worldwide, Inc. ("Firestream" or "defendant") seeking to

recover approximately $375,000 in damages resulting from defendant's alleged breach of its agreement to provide plaintiff with an integrated record-keeping system for its business. Defendant has moved to enforce a forum selection clause in the parties' contract that requires all claims against it to be litigated in Missouri state court. The motion was fully briefed and considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

Gasland is a New York corporation that operates a wholesale petroleum distribution business based in Kingston. Am. Compl. ¶ 2. Among other things, plaintiff's employees are responsible for transporting and delivering gasoline and other petroleum products to approximately fifty-six different service stations on a recurring basis. Id. ¶¶ 2-10. The operation of this distribution system has long required these employees to haphazardly record their daily activities in handwritten logs that must later be manually entered into several different computer programs to create consolidated electronic records. See id. ¶¶ 11-20.

In early 2012, Gasland reached out to Firestream, a Missouri corporation which sells computerized business software, to inquire about the possibility of streamlining these record-keeping activities. Am. Compl. ¶¶ 3, 22. Following some negotiation and an on-site presentation by defendant's representatives, plaintiff eventually agreed to work with defendant to purchase and implement an integrated electronic system that would simplify the record-keeping process. Id. at ¶¶ 23-114.

---

[1] These facts are viewed in the light most favorable to Gasland for purposes of this motion.

Firestream then submitted a letter proposal to Gasland outlining the likely costs of this upgrade, including the estimated costs of the software, hardware, and support services. Am. Compl., Ex. D, ECF No. 16-4 (the "Proposal Letter"). This Proposal Letter indicated that, once plaintiff signed the proposal, defendant would prepare a "Master Software License and Support and Services Agreement." Id. at 5.[2] Gasland's president signed this proposal on March 26, 2012. Id.

On April 4, 2012, Firestream sent Gasland the "Master Software License and Support and Services Agreement" outlining the terms of the agreement. Am. Compl. ¶ 115; see also Am. Compl., Ex. F, ECF No. 16-6 (the "Master Agreement"). The parties recognized, and the Master Agreement reflected, that replacing plaintiff's current record-keeping system with defendant's software solution would require a period of time to ensure proper training and implementation. Am. Compl. ¶¶ 135-46. To that end, the Master Agreement set out January 1, 2013, as the "go live" date on which plaintiff's systems would finally switch over to the new platform being implemented by defendant. Id. ¶¶ 137-38. As relevant here, §§ 26.3-26.4 of the Master Agreement also provided that:

> [1.] This agreement is governed by and construed in accordance with the laws of the State of Missouri . . . .
>
> [2.] [The parties further] agree that the courts of the State of Missouri will have exclusive jurisdiction and venue over any suit, claim, or proceeding commenced against [Firestream] by [Gasland] . . . .
>
> [3.] [Gasland consents] to the jurisdiction of the courts of the State of Missouri over the subject matter and parties, and hereby waives its . . . rights, if any, to invoke the jurisdiction or venue of any other court.

---

[2] Pagination corresponds to that assigned by CM/ECF.

Master Agreement at 14-15 (paragraph breaks added). Gasland's Vice President signed this agreement on behalf of plaintiff on April 17, 2012 and defendant's representatives quickly set to work. Am. Compl. ¶ 133.

For several months, the transition process seemed to run smoothly. Am. Compl. ¶¶ 141-46. But in September 2012, the project ran into trouble when the on-site representative Firestream had assigned to Gasland's contract fell ill and was unable to continue working. Id. ¶¶ 147-49. Although defendant eventually assigned a replacement representative, work on plaintiff's systems did not resume until early December 2012. Id. ¶ 151. To make matters worse, plaintiff then began experiencing a series of recurring errors with defendant's new computer software. Id. ¶¶ 154-65.

The January 1, 2013 "go live" deadline passed without any indication of when, if ever, Gasland would be able to finally switch over to Firestream's software program. See Am. Compl. ¶ 171. In an effort to get the implementation process back on track, the parties began holding weekly video-conferences to address the ongoing software issues. Id. ¶¶ 166, 172. However, defendant quickly began cancelling these meetings and started to fall behind on responding to issues raised by plaintiff's employees. Id. ¶¶ 173-74. Plaintiff, unable to commit further time and expense into what appeared to be a failing venture, called off the implementation of defendant's software. See id. ¶ 178.

However, in April 2014, "[i]n an effort to try to work things out" with Firestream, Gasland made one last attempt to move forward with the implementation of defendant's software. Am. Compl. ¶¶ 179, 213. The parties agreed, in writing, to a sixty-day schedule during which defendant's representatives would correct the various problems plaintiff had identified and finally "go live" with the record-keeping software. Id. ¶ 180-82; Am. Compl.,

Ex. J, ECF No. 16-10 (the "Last Chance Document"). Defendant signed this final agreement on May 1, 2014 and its representatives again set to work. See Last Chance Document at 5. However, defendant failed to meet these new deadlines and ultimately never delivered the system originally promised in the Master Agreement. Am. Compl. ¶¶ 182-83.

On May 20, 2014, Gasland filed a three-count complaint in the Northern District of New York seeking relief related to Firestream's failure to deliver the record-keeping solution it had promised to provide. Defendant promptly moved to dismiss this complaint on the basis of the forum selection clause found in the Master Agreement. In response, plaintiff amended its complaint to add a fourth claim for relief purportedly arising from the "separate legal agreement" embodied in the parties' Last Chance Document. Defendant, asserting that the broad forum selection clause found in the Master Agreement nevertheless covered plaintiff's additional claim for relief, renewed its motion to dismiss.

## III. **LEGAL STANDARD**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex., –U.S.–, 134 S. Ct. 568, 581 (2013). A district court considering such a motion typically relies strictly on the pleadings and affidavits, but may also order limited discovery if deemed necessary. See Longo v. FlightSafety Intern., Inc., 1 F. Supp. 3d 63, 67 (E.D.N.Y. 2014). Importantly, however, "because the plaintiff risks losing its chosen forum by enforcement of the forum-selection clause, the plaintiff is entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party" absent an evidentiary hearing. Id. (citation and internal quotation marks omitted).

## IV. **DISCUSSION**

Firestream seeks to enforce the forum selection clause found in the Master Agreement. Def.'s Mem., ECF No. 20-2, 5. Gasland responds by claiming the clause was not "reasonably communicated" during contract negotiations; alternatively, plaintiff contends enforcement would be unreasonable and unfair. Pl.'s Mem. Opp'n, ECF No. 23, 20-25. Plaintiff further contends that the additional claim found in its Amended Complaint arises from the Last Chance Document, a "separate agreement" which does not implicate the forum selection clause found in the Master Agreement. Id. at 28. Defendant replies that this new claim—which plaintiff's own Amended Complaint characterizes as a final attempt to "try and work things out" with defendant's representatives in light of their ongoing dispute—clearly falls under the scope of the Master Agreement and is therefore subject to the broad reach of that agreement's forum selection clause. Def.'s Reply, ECF No. 26, 8.

"In order to prevail on a motion seeking enforcement of a forum-selection clause, the movant must demonstrate: (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." Longo, 1 F. Supp. 3d at 67 (citation and internal quotation marks omitted). "If the movant satisfies these elements, the burden shifts to the party opposing enforcement to (4) rebut the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 67-68 (citation and internal quotations omitted). In other words, a court "must consider, first, whether the forum-selection clause is valid and, second, whether public

interest factors nevertheless counsel against its enforcement." Midamines SPRL Ltd. v. KBC Bank NV, No. 12-cv-8089(RJS), 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014).

### A. Reasonably Communicated

Firestream contends the forum selection clause in the Master Agreement was reasonably communicated to Gasland because it was "explicitly put forth in Section 26.4" as opposed to simply being "buried in a footnote" or "alluded to vaguely by reference." Def.'s Mem. at 7. Gasland argues that the forum selection clause was not "reasonably communicated" because defendant repeatedly failed to mention the clause's existence either during its initial discussions and presentations to plaintiff or in any of the draft proposals later exchanged between the parties. Pl.'s Opp'n at 20. In particular, plaintiff's President, Majed Nesheiwat, has submitted an affidavit claiming that none of defendant's various representatives ever pointed out the forum selection clause in the Master Agreement and even suggests that the earlier Proposal Letter should actually govern the parties' dispute.[3] See Nesheiwat Aff., ECF No. 17-13, ¶ 13.

Firestream asserts that Gasland's objection on this point is irrelevant. Defendant cites to a recent Second Circuit decision to argue that where, as here, the parties have agreed to a choice-of-law provision in their contract, the chosen body of law governs this first prong of the four-part analysis. Id. at n.2 (citing Martinez v. Bloomberg LP, 740 F.3d 211, 224 (2d Cir. 2014)). On this basis, defendant argues Missouri law is clear that "so long as a provision is included in the contract and the resisting party signed the agreement, that party has knowledge of the provision." Id. at 7. Importantly for purposes of this analysis, defendant

---

[3] Section 27.0 of the Master Agreement provides that it is intended to "supersede[ ] all prior agreements, discussions, and correspondence." Master Agreement at 15-16.

- 7 -

notes that plaintiff admits one of its authorized representatives signed the Master Agreement which contains the forum selection clause.[4]

Gasland, also citing the Second Circuit's decision in Martinez, strenuously objects to the application of Missouri law to this prong of the analysis. Rather, plaintiff claims that "federal case law is clear that there is a different standard required to be met" for determining whether a forum selection clause was "reasonably communicated" to a party. Pl.'s Opp'n at 22.

First, Gasland is correct to note that the Second Circuit held in Martinez that "questions of enforceability are resolved under federal law, while interpretive questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause." 740 F.3d at 224. And second, other courts have noted that Martinez's holding only reached parts two and three of the four-part rule explained above; it was in fact silent on the "reasonable communication" prong of the analysis. See Longo, 1 F. Supp. 3d at 68 & n.2 (noting that Martinez did not resolve a challenge to the "reasonably communicated" prong).

However, Gasland's memorandum fails to explain what this "federal" standard may be, or more importantly, to articulate how this standard differs from the basic contractual principle enunciated by Firestream and enshrined in the Missouri case law defendant has identified in support of its argument. Indeed, even a searching review of the federal case law which

---

[4] Gasland also denies Firestream's claim that the reciprocal forum selection clause was a product of intelligent negotiation between the parties. Pl.'s Opp'n at 22. It is unnecessary to resolve this disputed factual issue because, even assuming plaintiff's contention is true, the clause was nevertheless "reasonably communicated" for purposes of this analysis.

plaintiff claims controls the outcome of this question does not reveal anything to suggest the forum selection clause was not "reasonably communicated" under these circumstances. Id.

The clause at issue here appeared as a standard section in the main body of the Master Agreement signed by Gasland's authorized representative and is phrased in both clear and unambiguous language. Magi XXI, Inc. v. Stato Della Citta Del Vaticano, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011), aff'd, 714 F.3d 714 (2d Cir. 2013) (noting "[a] forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language"). Even viewed in the light most favorable to plaintiff, these circumstances are sufficient to satisfy the "reasonably communicated" prong of this test. See, e.g., Arial Tech., LLC v. Aerophile S.A., No. 14 CV 4435, 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) (noting this prong was "easily" satisfied where the clause "appear[ed] on the face of the contract that [the party] signed and now seeks to enforce"); Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 558 (S.D.N.Y. 2013) ("Plaintiff seeks to enforce the terms of the [contract] and therefore cannot . . . argue that it was unaware of the clause's existence."); Leviton Mfg. Co., Inc. v. Reeve, 942 F. Supp. 2d 244, 264 (E.D.N.Y. 2013) (finding there was "no reason to believe that the clause was not reasonably communicated" where the parties "signed the agreement containing the clause and thus presumably had an opportunity to review its contents").

Gasland half-heartedly suggests that the forum selection clause was "tucked away in a secondary document" that was promulgated "after the initial proposal-agreement was signed on March 26, 2012." Pl.'s Opp'n at 25. But although plaintiff is free to characterize Firestream's Proposal Letter in any way it sees fit, clever labeling and artful pleading cannot distract from a simple reality: the Master Agreement, which plaintiff's representative signed

and which includes the unambiguous forum selection clause in the main body of the text, is clearly the document which governs the parties' disputed relationship.

Indeed, a review of Firestream's Proposal Letter reveals that it does not actually contain any of the guarantees, warranties, agreements, or "go live" dates that Gasland's Amended Complaint alleges are the subject of defendant's breach. See, e.g., Am. Compl. ¶¶ 115-33, 186-94. Rather, the Proposal Letter simply provides an estimate for the expected pricing of defendant's products and services and explicitly states that "[w]ith [this] signed proposal, [Firestream] will prepare the [Master Agreement] and we'll get started!" See generally Proposal Letter. Further, and as noted above, plaintiff does not even deny signing the Master Agreement, whose provisions explicitly supersede all prior correspondence.

In sum, Gasland is not entitled to make claims based on the Master Agreement while simultaneously disclaiming the relevance of its other provisions. Longo, 1 F. Supp. 3d at 71 (rejecting a plaintiff's objection to the validity of a contract's forum selection clause where her claims were based on the existence of the contractual relationship); Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 322 (E.D.N.Y. 2010) (noting a forum selection clause would still be valid even if a person "turn[ed] to the last page of a paper contract and sign[ed] it without reading the terms"). Accordingly, the forum selection clause was reasonably communicated to plaintiff.

### B. Mandatory

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Magi XXI, Inc., 818 F. Supp. 2d at 605 (citation omitted). The Master Agreement provides that "the courts of the State of Missouri will have exclusive jurisdiction and venue over any suit, claim,

or proceeding commenced against [Firestream] by [Gasland]" and also provides that plaintiff "hereby waives its . . . rights, if any, to invoke the jurisdiction or venue of any other court." Master Agreement at 14-15. This language not only confers exclusive jurisdiction, but also incorporates obligatory venue language. Accordingly, the clause is mandatory.

### C. Covers All Claims

The Master Agreement provides that the forum-selection clause applies to "any suit, claim, or proceeding commenced against [Firestream] by [Gasland] . . . regardless of the forum of such action, whether in contract, warranty, or tort." Master Agreement at 15. This broad language certainly covers all of Gasland's claims related to the Master Agreement. However, plaintiff contends that its fourth claim—purportedly based upon defendant's alleged "breach" of the Last Chance Document—is a separate claim not subject to the broad reach of the Master Agreement's forum selection clause. Pl.'s Opp'n at 28.

"Whether a forum selection clause encompasses other claims depends principally on how broadly the clauses are worded." Cfirstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008). "However, [a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship." Id. (citation and internal quotation marks omitted).

Again, the parties dispute whether Missouri law or "federal" law applies to resolve this question.[5] But it makes no difference because the answer is the same whether Missouri state law or Second Circuit precedent is applied—the forum selection clause at issue here is broad enough to cover all of the claims in Gasland's Amended Complaint, especially since they are related to the parties' ongoing dispute over the software solution initially promised by defendant in the Master Agreement. Compare Earll v. eBay, Inc., 764 F. Supp. 2d 1148, 1150 (W.D. Mo. 2011) (rejecting overly restrictive reading of a forum selection clause where claims arose out of parties' original contractual relationship) and Raydiant Tech., LLC v. Fly-N-Hog Media Grp., Inc., 439 S.W.3d 238, 240 (Mo. Ct. App. 2014) (noting that plaintiff's claims "arise out of or are related to the contract, so they are within its forum selection clause"), with KTV Media Intern., Inc. v. Galaxy Grp., LA LLC, 812 F. Supp. 2d 377, 385 (S.D.N.Y. 2011) ("Where broadly worded, a forum selection clause is not limited solely to claims for breach of the contract that contains it."), and Russbeer Int'l LLC v. OAO Baltika Brewing Co., No. 07-CV-1212(CBA), 2008 WL 905044, at *5 (E.D.N.Y. Mar. 31, 2008) (finding forum selection clause enforceable where resisting party argued claim arose under separate contract, but gravamen of claim arose under the agreement containing the clause).

Indeed, a review of the Last Chance Document reveals that Gasland's assertions about its distinct nature are no more than a hollow ipse dixit. This document merely "describes the steps to be taken to resolve all open issues" related to the ongoing implementation problems plaintiff had been experiencing with Firestream's software, notifies

---

[5] "The Martinez court made clear that determining whether claims and parties are subject to a forum-selection clause is an interpretive question where the designated body of law . . . should guide analysis." Longo, 1 F. Supp. 3d at 69; see also Martinez, 740 F.3d at 217-18 ("Hence, if we are called upon to determine . . . whether [the forum-selection clause's] scope encompasses the claims or parties involved in a certain suit, we apply the law contractually selected by the parties.").

plaintiff that a new representative would be assigned to plaintiff's account to help work through this process, and sets out a revised timeline for going "live." See generally Last Chance Document. In other words, this "separate" agreement—and any alleged breach of its terms by defendant—arises out of the continuing dispute originating from defendant's representations regarding the products and services laid out in the original Master Agreement. In fact, as defendant correctly notes, the Amended Complaint specifically alleges that plaintiff signed this Last Chance Document in an "effort to try and work things out" with defendant and finally achieve the working software solution that was the subject of the Master Agreement. See Am. Compl. ¶ 213.

Simply put, a court cannot allow a forum selection clause to be circumvented where the purportedly distinct claims "grow out of the contractual relationship, or if the gist of the those claims is a breach of that relationship." KTV Media Int'l, Inc., 812 F. Supp. 2d at 387 (citations omitted). Accordingly, the clause covers all of the claims pleaded in Gasland's Amended Complaint.

### D. Insufficiently Rebutted

"Forum selection clauses play a crucial role in ensuring predictability in contract formation." Longo, 1 F. Supp. 3d at 71 (citations omitted). Where, as here, a court finds a forum selection clause to have satisfied the first three requirements, the clause is considered "presumptively enforceable" and the burden shifts to the non-movant to make "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Magi XXI, Inc., 818 F. Supp. 2d at 610 (citation and internal quotation marks omitted).

This is a "heavy burden" that may only be carried by demonstrating: (1) incorporation of the forum selection clause was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement of the clause would contravene a strong public policy of the forum state; or (4) trial in the selected forum would be so difficult and inconvenient that the plaintiff would effectively be deprived of its day in court. Martinez, 740 F.3d at 228.

As noted above, Gasland's suggestion that the forum selection clause is somehow fraudulent by virtue of it being "tucked away" in a "secondary" document is simply not a legitimate legal argument. Importantly, plaintiff does not claim that the clause was fraudulently inserted after the Master Agreement was signed; rather, plaintiff asserts the mere fact that one of its representatives signed the Master Agreement without reading its terms should somehow rise to the level of fraud. This argument is rejected.

Gasland's other arguments in rebuttal are likewise unavailing. Plaintiff claims it would have to expend more money to have this matter tried in Missouri and that certain employees who were present during the relevant period are working elsewhere or, in at least one case, deceased. See, e.g., Pl.'s Opp'n at 26. Again, however, plaintiff misapprehends the heavy burden at this step. Courts have consistently held that the mere burden of litigating in an inconvenient forum is insufficient; rather, a party must demonstrate that enforcement of the clause would be so onerous as to effectively deprive it of its day in court. KTV Media Inter., Inc., 812 F. Supp. 2d at 387-88. Plaintiff's assertions of expense and inconvenience do not equate to impossibility. Accordingly, plaintiff has not rebutted the presumption of enforceability.

## V. **CONCLUSION**

"When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations . . . . In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." Atl. Marine Const. Co., 134 S. Ct. at 583. This case is far from unusual. The forum selection clause in the Master Agreement was reasonably communicated to Gasland, mandatory in nature, and broad enough to cover all of the claims asserted in plaintiff's Amended Complaint. Plaintiff has failed to demonstrate that its enforcement would be unreasonable or unjust.

Therefore, it is

ORDERED that

1. Defendant Firestream's motion to dismiss on the basis of *forum non conveniens* is GRANTED; and

2. Plaintiff Gasland's complaint is DISMISSED without prejudice.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 4, 2015.
Utica, New York.